1  **Tim Gomes (168140)**
2  **LAW OFFICE OF TIM GOMES**
   **15 Boardman Street, 2nd Floor**
3  **San Francisco, CA 94103**
4  **Attorney for Plaintiff FRANK DITTO and JULIE DITTO**
5
6                              # E-filing
7
8              ## UNITED STATES DISTRICT COURT
9
10             ## NORTHERN DISTRICT OF CALIFORNIA
11
            ## SAN FRANCISCO AND/OR OAKLAND DIVISION
12
13
14  **FRANK DITTO and JULIE DITTO,**        **CASE NO. CV10 3979**
    **husband and wife,**
15
                                            **COMPLAINT FOR DAMAGES:**
16              **Plaintiff,**
    **vs.**                                 **WRONGFUL FORECLOSURE;**
17                                           **NEGLIGENCE;**
    **JP MORGAN CHASE N.A. , LONG**         **UNFAIR TRADE PRACTICES;**
18  **BEACH MORTGAGE COMPANY,**             **THE FAIR CREDIT REPORTING ACT;**
    **CALIFORNIA RECONVEYANCE;**            **VIOLATION OF TRUTH IN LENDING**
19  **and DOES 1-10.**                      **ACT; INJUNCTIVE RELIEF;**
                                            **INTENTIONAL INFLICTION OF**
20              **Defendants.**             **EMOTIONAL DISTRESS;**
21
                                            **JURY TRIAL REQUESTED**
22
23
24
25
26       COMES NOW Plaintiff(s) for their causes of action against Defendants. The Plaintiff
27  alleges as follows:
28

# I.
## PARTIES

1.1    Plaintiff, Frank Ditto and Julie Ditto, husband and wife, (hereafter "Plaintiff") Plaintiff is of majority age and a resident of California residing in their home, which is the subject of this lawsuit, at 5815-5817 East 17th Street, Oakland CA 94621.

1.2    On September 25, 2008 the Office of Thrift Supervision declared Washington Mutual insolvent and appointed the Federal Deposit Insurance Corporation as it's receiver pursuant to 12 U.S.C. Sec. 11821 (c) (3) (A).   Immediately following the receivership order and acceptance by FDIC as receiver, the FDIC entered into an agreement to sell certain banking assets of WaMu to JP Morgan Chase Bank N.A..   These assets included Long Beach Mortgage. Defendant, LONG BEACH MORGAGE, (hereinafter "JP MORGAN") is a wholly owned subsidiary of JP MORGAN CHASE NA, doing business in the State of California.   At all times relevant hereto Defendant LBMC was the originator, owned and/or serviced Plaintiff's mortgage loan.   JP Morgan was receiver of LBMC and the principal place of business in California is located at 818 Seventh Ave., Los Angeles, California.

1.8    Plaintiff is unaware of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue those defendants by fictitious names.  Plaintiff is informed and believes and on that basis allege that each of the fictitiously-named defendants, Does 1 through 5, is responsible for the acts or omissions alleged in this complaint and that plaintiffs' injuries were proximately caused by acts or omissions of these defendants.  Plaintiffs will seek leave to amend the complaint to allege their true names and capacities when ascertained.

1.9    Plaintiffs know the identities of Does 6 through 10, inclusive, and believe

1  that Does 6-10 have damaged them, but are unaware of their capacity or conduct as described in

2  this complaint. Because plaintiffs are ignorant of their capacity or conduct, they sue them

3
4  fictitiously. Plaintiffs will seek leave to amend this complaint when they have knowledge of

5  facts indicating the true nature of their capacity and conduct in the events described in this

6  complaint. Some of the persons or entities sued herein pursuant to California Code of Civil

7  Procedure §474 may be persons or entities with whom or of which plaintiffs are acquainted, but

8  at this time plaintiffs are not aware of information or facts that cause them to conclude that they

9
10  are aware of the identities of any persons or entities sued herein, other than those defendants

11  whose identities are specifically alleged. For these reasons, plaintiffs allege on information and

12  belief that they know the identities of Does 6 through 10, inclusive, but are unaware at the time

13  of the specific details of the actions and conduct of these particular defendants that give rise to

14  their legal liability to plaintiffs.

15

16  1.10    At all times herein mentioned each defendant was the agent, servant and

17  employee of each of the remaining defendants and in doing the things hereinafter alleged, were

18  acting within the course and scope of such agency and employment and with the full knowledge,

19  permission and consent, and/or subsequent ratification of each of the remaining defendants.

20

21  **II.**

22  **JURISDICTION**

23

24  2.1    This Court has jurisdiction and venue over the parties and subject matter herein,

25  in that the real estate at issue in this action is located in the State of California and in the County

26  of Alameda.

27  2.2    This Court has jurisdiction over the Federal Claims pursuant to 15 USC §1601 et

28  seq. and 15 USC 1640(e).

2.3     This Court has Jurisdiction over the federal claims pursuant to 28 USC §1331 and has Supplemental Jurisdiction over the State claims pursuant to 28 USC §1367(a).

## III.

## FACTUAL BACKGROUND

3.1     The Plaintiff is a homeowner in the State of California, residing in their home at 5815-5817 East 17th Street, Oakland CA 94621.

3.2     Plaintiff's original payments were $3,600.00 per month plus $600.00 in taxes for a total of $4,100.00.  With the ARM adjustment the payments are currently $4,100.00 plus the $600.00 in taxes for a total of $4,700.00 per month.  After December, the total will be over $5,000.00 per month.

3.3     A Notice of Default was filed on March 25, 2008.  It is Plaintiff's specific allegation that as noted in the above-stated facts, all of the Defendants and each of them, intentionally misrepresented the facts with full knowledge that they were not true for the purpose of defrauding Plaintiff who relied on their false statements and have been significantly damaged by said fraud through Defendant's classic "bait and switch" tactics.

3.4     The two (2) loans are purchase money loans.  Both the primary and secondary loans are closed end loans.   The loans closed on or about June 9, 2005.

3.5     On or about the closing date of June 9, 2005, no preliminary disclosures were given to Plaintiff as required by 12 CFR § 226.17(b) and 226.19(a).  This means they received no Truth in Lending ("TILA") disclosures at all.

3.6     At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written

agreement, is payable in more than four installments, and is the person to whom the transaction, which is the subject of this action was initially payable, making Defendants creditors within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

3.7 On or about June 9, 2005 ("settlement date"), Plaintiff executed promissory notes and security agreements in favor of Defendant, LBMC ("the transaction"). The transaction extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants. The transactions were designated by Defendants as loan # 6489595-7916 and loan # 6489597-7916.

3.8 True and accurate copies of the credit agreement evidencing the transaction for the Primary Loan is attached Exhibit A and by this reference are incorporated herein. True and accurate copies of the credit agreement evidencing the transaction for the Secondary Loan is attached hereto, marked "EXHIBIT A," and by this reference are incorporated herein.

3.9 As part of this consumer credit transaction, Defendants retained a security interest in 5815-5817 East 17th Street, Oakland CA 94621, which is used as Plaintiff's principal dwelling.

3.10 As noted in paragraph 3.19 above, before the settlement date of the primary loan, LBMC did not provide to Plaintiff: the preliminary disclosures required by Truth in Lending Act (TILA) at 12 CFR 226.17 and 18, or any other preliminary disclosures as required by RESPA at 24 C.F.R. §§ 3500.6 and 3500.7, which is commonly known as the Good Faith Estimate ("GFE"). No GFE was given before or at consummation.

3.11 LBMC intentionally failed and/or refused to provide Plaintiff with various disclosures that would indicate to Plaintiff that the contract entered into is void, illegal and

predatory in nature, such as an accurate Truth in Lending Disclosure (TIL) as required by 12 CFR §226.17 and 18.

3.12 No Hud-1 Settlement Statement ("Hud-1") was given at closing, which would have reflected the true cost of the credit transaction. Further, pursuant to 12 CFR 226.4 and 226.18(d) and (c)(1)(iii), no preliminary financial disclosure was given before closing, which would have reflected the true cost of the credit transaction. Primarily the GFE or Itemization of Amount Financed ("IOAF") would have disclosed the true cost of the loan; it would have reflected that a Yield Spread Premium ("YSP") was being charged as required by the TILA. These required disclosures would have disclosed the same YSP and/or the true cost of the loan, if either were given.

3.13 At closing, there were no GFE's given.

3.14 Defendants also violated California State Financial Code, Section 50701, in that they did not have a Broker contract and did not disclose YSP.

3.15 Defendants were under legal obligation as a fiduciary and had the responsibility of overseeing the purported loan consummation to make sure that Plaintiff's consummation was right and that the Plaintiff received all mandated documentation and material disclosures under TILA and RESPA, before and after the transaction. Plaintiff relied upon Defendant's claims that Defendants knew the best way to structure the transaction and would help Plaintiff make the best consumer transaction possible.

3.16 Defendants, established a pattern and practice of defrauding Plaintiff in that, during the entire life of the loan, they have not correctly credited payments, correctly calculated interest on the accounts and have never accurately debited fees, all based upon the illegal YSP that was paid by the lender to the broker up-selling the interest rate. Defendants knew they had a

[COMPLAINT FOR DAMAGES] - 6

disclosure requirement and because of the non-disclosure the accounts are not accurate and that Plaintiff would make further payments based on the accounts. Plaintiff did make payments based on the accounts and paid too much interest as a result.

3.17    The above violations are material in nature under the Truth in Lending Act ("TILA") and LBMC further violated their duties by understating the amount financed (AF) within the Truth in Lending Settlement Statement (TIL) by $4,164.55 in the Primary Loan and by $659.36 in the Secondary Loan. These are a material violations of 12 CFR 226.17 and 18. See 15 USC § 1602(u). The AF must be accurate, as there is no tolerance.

**IV.**

**WRONGFUL FORECLOSURE IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5, 2923.6 AND 2I923.8**

Defendants have Failed to Comply with the State Mandate To Attempt Workout Options With Their Borrowers Before Foreclosing. Plaintiffs were not allowed the opportunity to meet and confer with JP Morgan in an attempt to work out an option to avoid foreclosure despite asking for the opportunity. Plaintiffs were not given a trial plan period to bring account to current conditions. This program is available from Chase Home Financial yet defendants never discussed this possibility with the plaintiffs.

Due to astronomical foreclosure taking place in California, the State of California enacted emergency legislation in an attempt to stem the tide of foreclosure taking place in the sate of California. On or about January 31, 2008, the legislature enacted new foreclosure procedures to be followed. These new procedures are set forth in Civil Codes section 2923.5, 2923.6, 2924.8 and 2929.3. In essence the new procedures would require a lender to make contact with borrowers before filing a notice of default and if a default already existed, contact the borrower before publishing a notice of trustee sale.

As part of the new legislation, the State of California made the following findings:

"Section 1 of the Legislature finds and declares all of the following:

a) California is facing an unprecendented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007. In 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

b) High foreclosure rates have adversely affected property values in California, and will have even greated adverse consewuences as foreclosure rates continue to rise. According to statistics released bythe Hope Now Alliance, the number of completed California foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means les money for schools, public safety, and other key services...

c) It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing thde state's foreclosure rocess are essential to ensure that the process does not exacerbate the current crisis byadding more foreclosures to the glut

# V.

# NEGLIGENCE BY JP MORGAN CHASE

5.1    Plaintiff incorporates by reference herein all prior allegations of this Complaint and facts as stated above as if fully and completely set forth herein.

5.2    Defendant JP MORGAN is a licensed mortgage loan broker, subject to certain statutory and common law duties and as such has a fiduciary duty to Plaintiff.

5.3    Included in these duties is the obligation to properly train and supervise any and all agents that are licensed under their brokerage license, teaching them to be loyal, honest, truthful, and act in good faith toward their principal, including but not limited to the duty to investigate and disclose facts that might affect their principal's decision to purchase.

5.4    Plaintiffs  were informed by Chase Attorneys in a civil suite there were no documents on file pertaining to the original primary loan in the amount of $417,356.00. (Loan No.  6489595-7916).  Thus this would preclude any argument pertaining to compliance with TILA or RESPA.

1   As such JP Morgan failed to maintain documents and negligently failed to supervise the agents,

2   in charge of said documents.

3
      5.5     The negligence of JP Morgan was a substantial factor in causing Plaintiff to suffer
4
              the damages, including but not limited to, economic damages and emotional
5
              distress damages.
6
      5.6     Accordingly, Plaintiff is entitled to recover damages from JP Morgan in an amount
7
              to be proven at trial
8

9                                              **VI.**

10                                  **UNFAIR TRADE PRACTICES**

11                            **(CAL.BUS & PROF. CODE § 17200 et seq.)**

12      6.1   Plaintiff incorporates by reference herein all prior allegations of this Complaint and

13   facts as stated above as if fully and completely set forth herein.

14      6.2   Defendants have engaged in a pattern of unfair practices as stated in the facts above

15   in violation of the California Business and Professions Code, Chapter 4, Section 17200 et seq.

16
     Primarily the Defendants did not provide the required disclosures and broker contract under
17
     Section 50701. Defendants, in order to enrich themselves by working in concert, willfully and
18

19   wantonly breached their fiduciary duty to Plaintiff by conducting a classic bait and switch.

20   Defendants took a property that was overpriced in that it had been sitting for three (3) years,

21   inflated the price even more, didn't provide Plaintiff the loan they had agreed upon and with
22
     complete disregard for their client, took advantage of their unsuspecting client by concocting a
23
24   false scenario where Plaintiff was told at the last minute that the only loan(s) they could have

25   were two (2) loans for more money with no cash out, higher interest rates and higher payments.

26   This egregious behavior by Defendants in violation of state law, entitles Plaintiff to: void the
27
     contracts, damages, treble damages and reasonable attorney fees and costs pursuant to statute.
28

6.3    Plaintiff alleges that all of the Defendants' actions and inactions have impaired and damaged Plaintiff credit, entitling Plaintiff to damages to be proven at the time of trial.

## VII.

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

7.1    Plaintiff incorporates by reference herein all prior allegations of this Complaint and facts as stated above as if fully and completely set forth herein.

7.2    At all relevant times in this lawsuit, Defendant JP Morgan qualified as a provider of information to Credit Reporting Agencies under the Fair Credit Reporting Act and reported negative marks against Plaintiff. Plaintiff is entitled to maintain a private cause of action against these Defendants for an award of damages in an amount to be proven at the time of trial for all violations of that act which caused actual damage to Plaintiff, including emotional distress and humiliation, under 15 U.S.C. §1681s-2(b). Plaintiff is entitled to recover damages from Defendants for negligent non-compliance under 15 U.S.C. §1681o and Plaintiff is entitled to an award of punitive damages against Defendants for willful non-compliance under 15 U.S.C. §1681n(a)(2) in an amount to be proven at the time of trial.

## VIII.

## VIOLATION OF THE TRUTH IN LENDING ACT

10.1    Plaintiff incorporates by reference herein all prior allegations of this Complaint and facts as stated above as if fully and completely set forth herein.

10.2    Primary Loan and Secondary Loan violations against LBMC.

10.3    The Lender never in the loans history gave to the Plaintiff the proper loan disclosures required under the TILA at 12 CFR 226.17 and 18, in violation of the TILA. What was given was inaccurate. The APR on the Primary Loan is overstated due to incorrect payment streams and/or not enough payment streams in violation of 12 CFR 226.22. Further, Plaintiff was charged document preparation fees of $250.00 that were included in the finance charge.

11.2     On or about, March 25, 2008, LBMC has caused to be recorded a Notice of Default and/or a Notice of Trustee's Sale against Plaintiff's property

11.3     Neither JP Morgan or LBMC, nor anyone acting on hits behalf, has a right to foreclose on Plaintiff's property in that all of the transactions under which LBMC purported to gain an interest in Plaintiff's property were based on a failure to comply with Civil Code Sec. 2923.5 and as such this is also inconsistent with the recent mortgage alternatives required within the Federal Bail Out of Financial Institutions in 2008., as well as the TILA violations giving rise to Plaintiff's right of rescission. Therefore all such transactions are null, void, unenforceable and of no legal effect.

11.4     Plaintiff is threatened with immediate, irreparable harm if a non-judicial foreclosure is conducted. Plaintiff will lose their life savings and their sole asset if this occurs.

11.5     Accordingly, Plaintiff is entitled to a temporary restraining order and preliminary injunction and permanent injunction against JP Morgan or California Reconvance a another company under its authtority and/or its agents or assignees, prohibiting them from conducting nonjudicial foreclosure proceedings against the Plaintiff's property.

## X.

## INTENTIONAL INFLICTION OF EMOTION DISTRESS

## AGAINST ALL DEFENDANTS

12.1     Plaintiff incorporates by reference herein all prior allegations of this Complaint and facts as stated above as if fully and completely set forth herein.

12.2     All Defendants' conduct as described in this complaint was outrageous and was

1   Fees for preparing a Truth in Lending disclosure statement prohibits such charges under 12 USC
2   §2610.

3       10.4    JP Morgan through LBMC has engaged in a pattern of unfair practices in
4   violation of the Truth in Lending Act, 15 USC §1601 et seq. and 12 CFR §226.17 and 18, in that,
5   no proper and timely TILA disclosures were given to Plaintiff as required by 12 CFR §226.19,
6   which triggers the Plaintiff's right to damages there under. No Material Disclosures were given
7   as required by Regulation Z at 12 CFR §§226.17 and 18, entitling Plaintiff to damages under 15
8   USC §1640(a) et seq., of actual damages, twice the finance charge and reasonable attorney fees
9   and costs pursuant to statute.
10
11      10.5    No preliminary disclosure of Yield Spread Premium (YSP) was given in the
12  amount of $4,173.56.00. This is a material violation of 12 CFR 226.4(a), 226.17 and 18(d) and
13  (c)(1)(iii). The YSP raised Plaintiff's interest rate by .60% which was completely unknown to
14  Plaintiff as they did not receive a GFE or IOAF. The above is also a violation of 12 USC § 2607
15  for an illegal kickback as well as under California law as Plaintiff did not receive any Broker
16  Contract as required.

17      10.6    The above TILA violations play a major part in the bait and switch loan
18  types and quantity of loans given at closing along with the amount of the loan payments for
19  damages as allowed by 15 USC § 1640(a).
20
21      10.7    Plaintiff further sues for recoupment because of the pending non-judicial
22  foreclosure under 15 USC §1640(e) and sues for equitable tolling because of the fraud mentioned
23  in the facts and fraud causes of action listed above.
24
## IX.
25
## INJUNCTIVE RELIEF AGAINST JP MORGAN AND LBMC
26
27      11.1    Plaintiff incorporates by reference herein all prior allegations of this
28  Complaint and facts as stated above as if fully and completely set forth herein.

1   done with the knowledge that it would cause Plaintiff to suffer severe emotional distress.

2       12.3   As a result of the conduct of all Defendants, Plaintiff has suffered severe emotional

3   distress, including but not limited to anxiety and fear that they might lose their home.

4

5       12.4   As a result, Plaintiff is entitled to recover general damages in and amount to be

6   proven at trial.

7       12.5   The acts of all Defendants were willful, wanton, malicious, and oppressive, and

8   justify the award of punitive damages to Plaintiff in an amount to be proven at trial.

9

10                                      **PRAYER**

11      Wherefore, having set forth various causes of action against Defendants, Plaintiff prays

12  for relief as follows:

13      1.     For preliminary and permanent injunctive relief against JP Morgan until

14  compliance with California Civil Code Sec. 2923.5 et al have been complied with by and all of

15
    their agents, employees, and all persons and entities acting on their behalf or in concert with
16
17  them, be enjoined from foreclosing upon Plaintiffs property pending the outcome of this action.

18      2.     For general and special damages in an amount to be proven at trial.

19      3.     For punitive damages in an amount to be proven at trial;

20      4.     That the actions of all of the Defendants be determined to be unfair and deceptive
21
22  business practices in violation of California Law and that this Court award all such relief to

23  Plaintiff as they may be entitled to, including treble damages and an award of costs and

24  attorney's fees;

25      5.     That the actions of the Defendants be determined in violation of the Truth in
26
27  Lending Act, for the non-compliance thereof and the Regulations promulgated there under and

28

                            [COMPLAINT FOR DAMAGES] - 13

that the court award return of all finance charges, twice the finance charge and award other damages provided by 15 USCA §1640(a) et seq.

6.     That the Plaintiff be awarded $8,000.00 statutory penalty for the violations of the Truth in Lending Act;

7.     That the Plaintiff be awarded consequential damages, including attorney's fees incurred to bring this action, in an amount to be fully proved at the time of trial;

8.     That the Plaintiff be awarded his fees and costs pursuant to the written loan agreements which bind the Defendants; and

9.     That the Court award Plaintiff all relief to which he is entitled under the Fair Credit Reporting Act, including an award of punitive damages against the Defendants, for willful violations of the FCRA; and

12.     That the Court enter judgment that Plaintiff is the owner of the subject property and that Defendant has no interest in the property adverse to Plaintiff; and

13.     That the Court award such other relief as it deems just and proper.

## RIGHT TO AMEND

Plaintiff reserve the right to amend this Complaint, asserting other facts and causes of action after further investigation and discovery.


DATED this 1st day of September, 2008 and executed at San Francisco, California.

By: _____

TIM GOMES, Attorney for

Plaintiff FRANK DITTO and JULIE DITTO

[COMPLAINT FOR DAMAGES] - 14

# Long Beach Mortgage
### Specialty Home Loans

**Washington Mutual**

## Mortgage Document Order Request Form

Please complete this form, sign and return to: _____

Fax #: _____

ATTN: _____

**Please Show What Should Appear On Docs:**

1. Loan #: __6489597__                    Date: __06/03/05__
2. Vesting Verified By: _____
3. Borrowers Name(s): __FRANK DITTO__
4. Marital Status: __Married__
5. Property Address: __5815 E 17TH STREET, OAKLAND CA 94621__

6. Delivery Type:     LBMC AE          Broker          Courier          Title          Fed-Ex

Closing Company Name: _____
Address: _____
Contact: _____
Phone #: _____          Fax #: _____

**Lien Position**
☐ First Lien
☒ "Piggyback" Second Lien
(Second Lien only available in conjunction with LBMC 1st lien loan.)

**Property Type**
☐ Single Family   ☐ Condo
☒ 2 - 4 Units   ☐ PUD

| Occupancy Type | Amortization Period | Loan Type | | Pre-Payment Fee* |
|---|---|---|---|---|
| ☒ Owner Occupied | ☐ 40 Year | ☐ 6 Mth LIBOR | ☐ 2 Yr Fix/Adj IO (1st only) | ☐ 3 Year |
| ☐ Non-Owner | ☒ 30 Year | ☐ 2 Yr Fix/Adj | ☐ 3 Yr Fix/Adj IO (1st only) | ☒ 2 Year |
| ☐ Second Home | ☐ 20 Year | ☐ 3 Yr Fix/Adj | ☐ 5 Yr Fix/Adj IO (1st only) | ☐ 1 Year |
| **Loan** | ☐ 15 Year | ☐ 5 Yr Fix/Adj | ☐ 2 Yr Fix/Adj (40 year product) | ☐ None / Other |
| **Purpose** | | ☐ 15 Yr Fix | | * Products available with a prepayment fee are also |
| ☒ Purchase | | ☐ 20 Yr Fix | ☐ 3 Yr Fix/Adj (40 year product) | available without a prepayment fee. |
| ☐ Refinance | | ☒ 30 Yr Fix | | |
| | | ☐ 40 Yr Fix | | |

7. Closing Date: _____   Time: _____   1st Payment Date: __08/01/05__

8. Loan Amt: $ __103,000.00__   9. Margin: _____   10. Interest Rate __10.900__

11. Appraised Value: $ __515,000.00__          12. Sales Price $ __521,695.00__

13. Property Tax Annual Premium: __673.85__

14. Hazard Insurance Annual Premium: $ __1,565.09__          Expires _____

15. Impound Escrow Account: Y / N   (Evidence of Insurance required prior to docs if impounds requested)

| BROKER FEES * | | LENDER FEES | |
|---|---|---|---|
| Origination | $ | Underwriting | $ |
| Underwriting ($400 max.) | $ | Doc Prep Fee | $ |
| Processing ($500 max) | $ | Flood Certification | $ __5.00__ |
| Credit Report   POC: Y/N | $ | Tax Procurement/Tracking | $ |
| Appraisal   POC: Y/N | $ | Tax Research/Payment | |
| Application ($275 max.) | $ | Services | $ |
| Courier (for Broker) | $ | Discount Fee | $ |
| Courier (for Closing Agent) | $ | PYA to Broker | $ |
| Notary | $ | Processing Fee | |
| Surveys   POC: Y/N | $ | (Piggyback Only) | $ __299.00__ |
| | | Seller Contribution | |
| | | of Non-Recurring Closing $ | |

* Broker fees are not permitted on second lien mortgage loans.

**Note: This Document Order Request form is in no way a commitment to prepare documents nor a commitment to close the loan. This document is not an amendment request form to change the terms of the loan.**

By signing below, as an authorized representative of this company, I certify that the fees listed above represent the fair market value of the services provided in connection with this loan. I also verify that the information is accurate and correct.

Signed: _____          Date: _____

Approved by LBMC SLC: _____          Date: _____

4140513 (0503)
4140513 (04/07/05) PC

JPM 00157

EXHIBIT A

JUN. 3. 2005 5:36PM    MANHATTAN FINANCIAL GROUP         NO. 348    P. 3
Jan-03-05  02:34cm  From                                   T-215  P.002/5D  F-803



# Long Beach Mortgage
### Specialty Home Loans
**Washington Mutual**

### Mortgage Document Order Request Form
Please complete this form, sign and return to: _____
Fedx#: _____
ATTN: _____

**Please Show What Should Appear On Docs:**

| | | |
|---|---|---|
| 1. | Loan #: | 9489587 | Date: 06/03/05 |
| 2. | Vesting Verified By: | _____ |
| 3. | Borrowers Name(s): | FRANK DITTO |
| 4. | Marital Status: | Married |
| 5. | Property Address: | 5815 E 17TH STREET, OAKLAND CA 94621 |

6. Delivery Type:    LBMC AE ☐   Broker ☐   Courier ☐   Title ☐   Fed-Ex ☐

Closing Company Name: _____
Address: _____
Contact: _____
Phone #: _____          Fax #: _____

**Lien Position**
- ☐ First Lien
- ☒ "Piggyback" Second Lien
  (Second Lien only available in conjunction with LBMC 1st lien loan.)

**Property Type**
- ☒ Single Family   ☐ Condo
- ☒ 2 - 4 Units     ☐ PUD

**Occupancy Type**
- ☒ Owner Occupied
- ☐ Non-Owner
- ☐ Second Home

**Amortization Period**
- ☐ 40 Year
- ☒ 30 Year
- ☐ 20 Year
- ☐ 15 Year

**Loan Type**
- ☐ 6 Mth LIBOR
- ☐ 2 Yr Fix/Adj
- ☐ 3 Yr Fix/Adj
- ☐ 5 Yr Fix/Adj
- ☐ 15 Yr Fix
- ☐ 20 Yr Fix
- ☒ 30 Yr Fix
- ☐ 40 Yr Fix

- ☐ 2 Yr Fix/Adj IO (1st only)
- ☐ 5 Yr Fix/Adj IO (1st only)
- ☐ 2 Yr Fix/Adj (40 year product)
- ☐ 3 Yr Fix/Adj (40 year product)

**Loan Purpose**
- ☒ Purchase
- ☐ Refinance

**Pre-Payment Fee***
- ☐ 3 Year
- ☒ 2 Year
- ☐ 1 Year
- ☐ None / Other
  * Products available with a prepayment fee are also available without a prepayment fee.

7. Closing Date: _____   Time: _____   1st Payment Date: 08/01/05

8. Loan Amt: $ 404,339.00 ~~408,990.00~~   9. Margin: _____   10. Interest Rate 10.900

11. Appraised Value: $ ~~$18,000.00~~ 532,000.00   12. Sales Price $ 521,695.00

13. Property Tax Amount Premium: 673.85

14. Hazard Insurance Annual Premium: $ 1,865.09   Expires _____

15. Impound Escrow Account: Y / N   (Evidence of insurance required prior to docs if impounds requested)

| BROKER FEES * | | LENDER FEES | |
|---|---|---|---|
| Origination | $ | Underwriting | $ |
| Underwriting ($400 max.) | $ | Doc Prep Fee | $ |
| Processing ($500 max) | $ | Flood Certification | $ 6.00 |
| Credit Report    POC: Y/N | $ | Tax Procurement/Tracking | $ |
| Appraisal    POC: Y/N | $ | Tax Research/Payment Services | $ |
| Application ($275 max.) | $ | Discount Fee | $ |
| Courier (for Broker) | $ | PYA to Broker | $ |
| Courier (for Closing Agent) | $ | Processing Fee | |
| Notary | $ | (Piggyback Only) | $ 289.00 |
| Surveys    POC: Y/N | $ | Seller Contribution of Non-Recurring Closing | $ |

* Broker fees are not permitted on second lien mortgage loans.

**Note:** This Document Order Request form is in no way a commitment to prepare documents nor a commitment to close the loan. This document is not an amendment request form to change the terms of the loan.

By signing below, as an authorized representative of this company, I certify that the fees listed above represent the fair market value of the services provided in connection with this loan. I also verify that the information is accurate and correct.

Signed: _____          Date: _____

Approved by LBMC SLC: _____   Date: _____

4150513 (05/03)
4140513.04/25(RPC)

JUN 10 2005 11:27 FR FIDELITY NATIONAL    650 588 2702 TO 19254738300

Date: June 7, 2005
Escrow No.: 05-**2010013**-MD
Locate No.: CAFNT0901-0941-0006-0001136546

## GENERAL PROVISIONS

**1. DEPOSIT OF FUNDS**
The law dealing with the disbursement of funds requires that all funds be available for withdrawal as a matter of right by the title entity's escrow and/or sub escrow account prior to disbursement of any funds. Only cash or wire-transferred funds can be given immediate availability upon deposit. Cashier's checks, teller's checks and Certified checks may be available one business day after deposit. All other funds such as personal, corporate or partnership checks and drafts are subject to mandatory holding periods which may cause material delays in disbursement of funds in this escrow. In order to avoid delays, all fundings should be wire transferred. Outgoing wire transfers will not be authorized until confirmation of the respective incoming wire transfer or of availability of deposited checks.

All funds received in this escrow shall be deposited with other escrow funds in a general escrow account or accounts of Fidelity National Title Company, with any state or national bank, or savings and loan association (the "depository Institution") and may be transferred to any other such general escrow account or accounts. The parties to this escrow acknowledge that the maintenance of such escrow accounts with some depository institutions may result in Escrow Holder's being provided with an array of bank services, accommodations or other benefits by the depository institution. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the depository institution. All such services, accommodations and other benefits shall accrue to Escrow Holder and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of such services, accommodations or other benefits.

Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest-bearing account. All disbursements shall be made by check of Fidelity National Title Company. The principals to this escrow are hereby notified that the funds deposited herein are insured only to the limit provided by the Federal Deposit Insurance Corporation. Any instruction for bank wire will provide reasonable time or notice for Escrow Holder's compliance with such instruction. Escrow Holder's sole duty and responsibility shall be to place said wire transfer instructions with its wiring bank upon confirmation of (1) satisfaction of conditions precedent or (2) document recordation at close of escrow. Escrow Holder will NOT be held responsible for lost interest due to wire delays caused by any bank or the Federal Reserve System, and recommends that all parties make themselves aware of banking regulations with regard to placement of wires.

In the event there is insufficient time to place a wire upon any such confirmation or the wires have closed for the day, the parties agree to provide written instructions for an alternative method of disbursement. WITHOUT AN ALTERNATIVE DISBURSEMENT INSTRUCTION, FUNDS WILL BE HELD IN TRUST IN A NON-INTEREST BEARING ACCOUNT UNTIL THE NEXT OPPORTUNITY FOR WIRE PLACEMENT.

**2. PRORATIONS AND ADJUSTMENTS**
All prorations and/or adjustments called for in this escrow are to be made on the basis of a thirty (30) day month unless otherwise instructed in writing. You are to use information contained on last available tax statement, rental statement as provided by the Seller, beneficiary's statement and fire insurance policy delivered into escrow for the prorations provided for herein.

**3. SUPPLEMENTAL TAXES**
The within described property may be subject to supplemental real property taxes due to the change of ownership taking place through this escrow. Any supplemental real property taxes arising as a result of the transfer of this property to Buyer shall be the sole responsibility of Buyer and any supplemental real property taxes arising prior to the closing date shall be the sole responsibility of the Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.

**4. UTILITIES/POSSESSION**
Transfer of utilities and possession of the premises are to be settled by the parties directly and outside escrow.

**5. PREPARATION AND RECORDATION OF INSTRUMENTS**
Escrow Holder is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Close of escrow shall mean the date instruments are recorded.

**6. AUTHORIZATION TO FURNISH COPIES**
You are authorized to furnish copies of these instructions, supplements, amendments, notices of cancellation and closing statements, to the Real Estate Broker(s) and Lender(s) named in this escrow.

**7. RIGHT OF CANCELLATION**
Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver one copy of such notice to each of the other principals at the addresses stated in this escrow. UNLESS WRITTEN

OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN TEN (10) DAYS AFTER DATE OF SUCH MAILING, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

**8. PERSONAL PROPERTY**
No examination or insurance as to the amount or payment of personal property taxes is required unless specifically requested.

By signing these General Provisions, the parties to the escrow hereby acknowledge that they are indemnifying the Escrow Holder against any and all matters relating to any "Bulk Sales" requirements, and instruct Escrow Agent to proceed with the closing of escrow without any consideration of matter of any nature whatsoever regarding "Bulk Sales" being handled through escrow.

**9. RIGHT OF RESIGNATION**
Escrow Holder has the right to resign upon ten (10) days written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

**10. AUTHORIZATION TO EXECUTE ASSIGNMENT OF HAZARD INSURANCE POLICIES**
Either Buyer, Seller and/or Lender may hand you the insurance agent's name and insurance policy information, and you are to execute, on behalf of the principals hereto, form assignments of interest in any insurance policy (other than title insurance) called for in this escrow, forward assignment and policy to the insurance agent, requesting that the insurer consent to such transfer and/or attach a loss payable clause and/or such other endorsements as may be required, and forward such policy(s) to the principals entitled thereto. It is not your responsibility to verify the information handed you or the assignability of said insurance. Your sole duty is to forward said request to insurance agent at close of escrow.

Further, there shall be no responsibility upon the part of Escrow Holder to renew hazard insurance policy(s) upon expiration or otherwise keep it in force either during or subsequent to the close of escrow. Cancellation of any existing hazard insurance policies is to be handled directly by the principals, and outside escrow.

**11. ACTION IN INTERPLEADER**
The principals hereto expressly agree that you, as Escrow Holder, have the absolute right at your election to file an action in interpleader requiring the principals to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the principals jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefore to be rendered by the court. Upon the filing of such action, you shall thereupon be fully released and discharged from all obligations imposed by the terms of this escrow or otherwise.

**12. TERMINATION OF AGENCY OBLIGATION**
If there is no action taken on this escrow within six (6) months after the "time limit date" as set forth in the Escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies or other items held by you shall be returned to the parties depositing same. In the event of cancellation of this escrow, whether it be at the request of any of the principals or otherwise, the fees and charges due Fidelity National Title Company, including expenditures incurred and/or authorized shall be borne equally by the parties hereto (unless otherwise agreed to specifically).

**13. CONFLICTING INSTRUCTIONS**
Upon receipt of any conflicting instructions, you are to take no action in connection with this escrow until non-conflicting instructions are received from all of the principals to this escrow (subject to sections 7, 9, 11 and 12 above).

**14. REIMBURSEMENT ATTORNEY FEES/ESCROW HOLDER**
In the event that a suit is brought by any party or parties to these escrow instructions to which the Escrow Holder is named as a party which results in a judgment in favor of the Escrow Holder and against a principal or principals herein, the principals or principal's agent agree to pay said Escrow Holder all costs, expenses and reasonable attorney's fees which it may expend or incur is said suit, the amount thereof to be fixed and judgment therefore to be rendered by the court in said suit.

**15. DELIVERY/RECEIPT**
Delivery to principals as used in these instructions unless otherwise stated herein is to be by regular mail, and receipt is determined to be 72 hours after such mailing. All documents, balances and statements due to the undersigned are to be mailed to the address shown herein.

**16. STATE/FEDERAL CODE NOTIFICATIONS**
According to Federal Law, the Seller, when applicable, will be required to complete a sales activity report that will be utilized to generate a 1099 statement to the Internal Revenue Service.

Continued on Following Page

Initials: _____

JUN 10 2005 11:29 FR H    TY NATIONAL    650 588 2702 TO 19254798306    .09/24

Date: June 7, 2005                                                                Page 6
Escrow No.: 05-2010013-MO
Locate No.: CAFNTD901-0941-0006-0001136546

Pursuant to State Law, prior to the close of escrow, Buyer will provide Escrow Holder with a Preliminary Change of Ownership Report. In the event said report is not handed to Escrow Holder for submission to the County in which subject property is located, upon recording of the Grant Deed, Buyers acknowledge that the applicable fee will be assessed by said County and Escrow Holder shall debit the account of Buyer for same at close of escrow.

Buyer and Seller herein represent and warrant that they will seek and obtain independent legal advice and counsel relative to their obligations under the "Foreign Investors In Real Property Act", and any other applicable federal and/or state laws regarding same, and will take all steps necessary in order to comply with such requirements and hereby hold you harmless relative to their compliance therewith.

**17. ENCUMBRANCES**

Escrow Holder is to act upon any statements furnished by a lienholder or his agent without liability or responsibility for the accuracy of such statements. Any adjustments necessary because of a discrepancy between the information furnished Escrow Holder and any amount later determined to be correct shall be settled between the parties direct and outside of escrow.

You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

**18. ENVIRONMENTAL ISSUES**

Fidelity National Title Company has made no investigation concerning said property as to environmental/toxic waste issues. Any due diligence required or needed to determine environmental impact as to forms of toxification, if applicable, will be done directly and by principals outside of escrow. Fidelity National Title Company is released of any responsibility and/or liability in connection therewith.

**19. USURY**

Escrow Holder is not to be concerned with any questions of usury in any loan or encumbrance involved in the processing of this escrow and is hereby released of any responsibility or liability therefore.

**20. DISCLOSURE**

Escrow Holder's knowledge of matters affecting the property, provided such facts do not prevent compliance with these instructions, does not create any liability or duty in addition to these instructions.

**21. CLARIFICATION OF DUTIES**

Fidelity National Title Company serves ONLY as an Escrow Holder in connection with these instructions and cannot give legal advice to any party hereto.

Escrow Holder is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, nor as to the identity, authority or rights of any person executing the same. Escrow Holder's duties hereunder shall be limited to the proper handling of such money and the proper safekeeping of such instruments, or other documents received by Escrow Holder, and for the disposition of same in accordance with the written instructions accepted by Escrow Holder.

The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all parties.

THIS AGREEMENT IN ALL PARTS APPLIES TO, INURES TO THE BENEFIT OF, AND BINDS ALL PARTIES HERETO, THEIR HEIRS, LEGATEES, DEVISEES, ADMINISTRATORS, EXECUTORS, SUCCESSORS AND ASSIGNS, AND WHENEVER THE CONTEXT SO REQUIRES THE MASCULINE GENDER INCLUDES THE FEMININE AND NEUTER, AND THE SINGULAR NUMBER INCLUDES THE PLURAL. THESE INSTRUCTIONS AND ANY OTHER AMENDMENTS MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, EACH OF WHICH SHALL BE CONSIDERED AS AN ORIGINAL AND BE EFFECTIVE AS SUCH.

MY SIGNATURE HERETO CONSTITUTES INSTRUCTION TO ESCROW HOLDER OF ALL TERMS AND CONDITIONS CONTAINED IN THIS AND ALL PRECEDING PAGES AND FURTHER SIGNIFIES THAT I HAVE READ AND UNDERSTAND THESE GENERAL PROVISIONS.

**Fidelity National Title Company conducts escrow business under a Certificate of Authority No. 2597-3 issued by the California Department of Insurance.**

_Ali Ghahreman Mahalatinia_
Ali Ghahreman Mahalatinia

RECEIVED BY:  Fidelity National Title Company

BY: _____

DATE: _____

THIS IS TO CERTIFY
A TRUE CO... THAT TH... 
FIDELI...
BY ...

JUN 10 2005 11:31 FR FIDEL NATIONAL     650 588 2702 TO 19254798306

Date: June 9, 2005
Escrow No.: 05-2010013-MD                                    Page 6
Locate No.: CAFNT0901-0941-0006-0001136546

## GENERAL PROVISIONS

**1. DEPOSIT OF FUNDS**
The law dealing with the disbursement of funds requires that all funds be available for withdrawal as a matter of right by the title entity's account or sub escrow account prior to disbursement of any funds. Only cash or wire-transferred funds can be given immediate availability upon deposit. Cashier's checks, teller's checks and Certified checks may be available one business day after deposit. All other funds such as personal, corporate or partnership checks and drafts are subject to mandatory holding periods which may cause material delays in disbursement of funds in this escrow. In event of such delays, all fundings should be wire transferred. Outgoing wire transfers will not be authorized until confirmation of the respective incoming wire transfer or of availability of deposited checks.

All funds received in this escrow shall be deposited with other escrow funds in a general escrow account or accounts of Fidelity National Title Company, with any state or national bank, or savings and loan association (the "depository institution") and may be transferred to any other such general escrow account or accounts. The parties to this escrow acknowledge that the maintenance of such escrow accounts with some depository institutions may result in Escrow Holder's being provided with an array of bank services, accommodations or other benefits by the depository institution. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the depository institution. All such services, accommodations and other benefits shall accrue to Escrow Holder and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of such services, accommodations or other benefits.

Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest-bearing account. All disbursements shall be made by check of Fidelity National Title Company. The principals to this escrow are hereby notified that the funds deposited herein are insured only to the limit provided by the Federal Deposit Insurance Corporation. Any instruction for bank wire will provide reasonable time or notice for Escrow Holder's compliance with such instruction. Escrow Holder's sole duty and responsibility shall be to place said wire transfer instructions with its wiring bank upon confirmation of (1) satisfaction of conditions precedent or (2) document recordation at close of escrow. Escrow Holder will NOT be held responsible for lost interest due to wire delays caused by any bank or the Federal Reserve System, and recommends that all parties make themselves aware of banking regulations with regard to placement of wires.

In the event there is insufficient time to place a wire upon any such confirmation of the wires have closed for the day, the parties agree to provide written instructions for an alternative method of disbursement. WITHOUT AN ALTERNATIVE DISBURSEMENT INSTRUCTION, FUNDS WILL BE HELD IN TRUST IN A NON-INTEREST BEARING ACCOUNT UNTIL THE NEXT OPPORTUNITY FOR WIRE PLACEMENT.

**2. PRORATIONS AND ADJUSTMENTS**
All prorations and/or adjustments called for in this escrow are to be made on the basis of a thirty (30) day month unless otherwise instructed in writing. You are to use information contained on the latest available tax statement, rental statement as provided by the Seller, beneficiary's statement and fire insurance policy delivered into escrow for the prorations provided for herein.

**3. SUPPLEMENTAL TAXES**
The within described property may be subject to supplemental real property taxes due to the change of ownership taking place through this escrow. Any supplemental real property taxes arising as a result of the transfer of the property to Buyer shall be the sole responsibility of Buyer and any supplemental real property taxes arising prior to the closing date shall be the sole responsibility of the Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.

**4. UTILITIES/POSSESSION**
Transfer of utilities and possession of the premises are to be settled by the parties directly and outside escrow.

**5. PREPARATION AND RECORDATION OF INSTRUMENTS**
Escrow Holder is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Close of escrow shall mean the date instruments are recorded.

**6. AUTHORIZATION TO FURNISH COPIES**
You are authorized to furnish copies of these instructions, supplements, amendments, notices of cancellation and closing statements, to the Real Estate Broker(s) and Lender(s) named in this escrow.

**7. RIGHT OF CANCELLATION**
Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver, one copy of such notice to each of the other principals at the addresses stated in this escrow. UNLESS WRITTEN

OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN TEN (10) DAYS AFTER DATE OF SUCH MAILING, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

**8. PERSONAL PROPERTY**
No examination or insurance as to the amount or payment of personal property taxes is required unless specifically requested.

By signing these General Provisions, the parties to the escrow hereby acknowledge that they are indemnifying the Escrow Holder against any and all matters relating to any "Bulk Sales" requirements, and instruct Escrow Agent to proceed with the closing of escrow without any consideration of matter of any nature whatsoever regarding "Bulk Sales" being handled through escrow.

**9. RIGHT OF RESIGNATION**
Escrow Holder has the right to resign upon ten (10) days written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

**10. AUTHORIZATION TO EXECUTE ASSIGNMENT OF HAZARD INSURANCE POLICIES**
Either Buyer, Seller and/or Lender may hand you the insurance agent's name and insurance policy information, and you are to execute, on behalf of the principals hereto, form assignments of interest in any insurance policy (other than title insurance) called for in this escrow, forward assignment and policy to the insurance agent, requesting that the insurer consent to such transfer and/or attach a loss payable clause and/or such other endorsements as may be required, and forward such policy(s) to the principals entitled thereto. It is not your responsibility to verify the information handed you or the assignability of said insurance. Your sole duty is to forward said request to insurance agent at close of escrow.

Further, there shall be no responsibility upon the part of Escrow Holder to renew hazard insurance policy(s) upon expiration or otherwise keep it in force either during or subsequent to the close of escrow. Cancellation of any existing hazard insurance policies is to be handled directly by the principals, and outside of escrow.

**11. ACTION IN INTERPLEADER**
The principals hereto expressly agree that you, as Escrow Holder, have the absolute right at your election to file an action in interpleader requiring the principals to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the principals jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefore to be rendered by the court. Upon the filing of such action, you shall thereupon be fully released and discharged from all obligations imposed by the terms of this escrow or otherwise.

**12. TERMINATION OF AGENCY OBLIGATION**
If there is no action taken on this escrow within six (6) months after the "time limit date" as set forth in the escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies or other items held by you shall be returned to the parties depositing same. In the event of cancellation of this escrow, whether it be at the request of any of the principals or otherwise, the fees and charges due Fidelity National Title Company, including expenditures incurred and/or authorized shall be borne equally by the parties hereto (unless otherwise agreed to specifically).

**13. CONFLICTING INSTRUCTIONS**
Upon receipt of any conflicting instructions, you are to take no action in connection with this escrow until non-conflicting instructions are received from all of the principals to this escrow (subject to sections 7, 9, 11 and 12 above).

**14. REIMBURSEMENT ATTORNEY FEES/ESCROW HOLDER**
In the event that a suit is brought by any party or parties to these escrow instructions to which the Escrow Holder is named as a party which results in a judgment in favor of the Escrow Holder and against a principal or principals herein, the principal or principals against whom said Escrow Holder all costs, expenses and reasonable attorney's fees which it may expend or incur in said suit, the amount thereof to be fixed and judgment therefore to be rendered by the court in said suit.

**15. DELIVERY/RECEIPT**
Delivery to principals as used in these instructions unless otherwise stated herein is to be by regular mail, and receipt is determined to be 72 hours after such mailing. All documents, balances and statements due to the undersigned are to be mailed to the address shown herein.

**16. STATE/FEDERAL CODE NOTIFICATIONS**
According to Federal Law, the Seller, when applicable, will be required to complete a sales activity report that will be utilized to generate a 1099 statement to the Internal Revenue Service.

Continued on Following Page                          Initials: _____

JPM 00161



```
                        Prymak, Inc. - VERSION 13.2
                    LBMC PRODUCTION SYSTEM -- 0522
 In DB 290            Add/Change a Record          DB Name PRICING MODEL
 REF NUMBER  6489597   REF NAME   DITTO          Screen     MODELP-1
 PRICING MODEL, Page 1 -------------------------------------------------
                                              Lock Status =
 Loan Program ....... 2NDFIX30YR-2ND FIX 30 YEAR           Lien Position = 2
 Rate Sheet Codes ... 2
 Do any Specials apply? N ...          Appraisal Value   $    522000.00
 Credit Category .... AP               Input Review Values?
 Loan (Payment) Term  360 mos.         Sales Price ........  522,000.00
 Amortization Term .. 360 mos.                             LTV   19.988%
 Start Rate ......... 10.900% (Orig. 10.900%)
 Gross Margin .......       %          Is Loan Assumable?   Yes  X No
 Index / Interim Cap        %       %  Prepayment Penalty? X Yes     No
 Loan.Amount ....... $    104339.00    Prepayment Penalty Years : 2
 Loan Purpose ....... PURCHASE
 Occupancy ......... OWNER-OCC         Documentation Type:  STATED
 Property Type ...... 2-4 UNITS        [ ] Quick Credit?  [N] Ltd Doc?
 Is this a Correspondent Loan? .... N  [Y] Stated Income? [N] Co-borrower?
 (if Yes) Closing Price .....     Credit\ Borr.  Broker 653    LBMC
     Impound Credit ... $            Scores/ Coborr Broker        LBMC

 Revenue Factor... 99.337  Revenue $  -691.77   GO ON TO NEXT SCREEN? Y/N Y
         Fri Jun 10 10:49:29 2005 Database 290 Terminal    1231
```

JPM 00162

```
                    Prymak, Inc. - VERSION 13.2
                   LBMC PRODUCTION SYSTEM -- 0522
   In DB 290            Add/Change a Record         DB Name PRICING MODEL
   REF NUMBER   6489597   REF NAME   DITTO            Screen       MODELP-3
   PRICING MODEL, Page 3 - LENDER FEES ----------------------------------------

        Underwriting ............ 0.00      Processing ...........  299.00
   A    Flood Search ............     5.00
   P    Tax Procurement (Vendor)     0.00   Tax Research (WaMu) ..    0.00
   R    Inspection ...............           Commitment ..........

        Lender Misc. -                                      .....

        Discount (Lender) Points ...     % ..................... $      0.00
        Start Rate:                                                   10.900


   N    Seller Contribution to
   O    Discount (Lender) Points ...  0.000% ..................... $
   N    Total Discount Points ......  0.000  .....................       0.00
   -
   A    Doc Prep .................    0.00   Doc Redraw ..........
   P
   R
             Fri Jun 10 10:49:35 2005 Database 290 Terminal    1231
```

JPM 00163



```
                    Prymak, Inc. - VERSION 13.2
                   LBMC PRODUCTION SYSTEM -- 0522
In DB 290              Add/Change a Record        DB Name PRICING MODEL
REF NUMBER   6489597   REF NAME   DITTO          Screen    MODELP-4
   PRICING MODEL, Page 4 - AGENT FEES ----------------------------------

  A      Settlement ...............  (Low        /High        ) ...
  P      Courier ..............              3rd Party Recording Fee ....
  R      Attorney ............              Mortgage Insurance App .....


   ---------------------------------------------------------------------
         Title Insurance .............  (Low        /High        ) ...
  N      Notary .................
  O      Pest Inspection ........            Title Exam ................
  N      Abstract/Title Search ..            Title Guaranty ...........
  -      Title Insurance Binder              Attorney's Opinion ........
  A      Survey ................            Endorsements .............
  P      3rd Party Doc Prep .....            County Recording Fees .....
  R      City / County Stamps ...            State Stamps .............


     Revenue Factor  99.337   Revenue $   -691.77     Print Pricing? (Y/N)

     Return to Pricing Screens? (Y/N)      Return to Originating DB? (Y/N)
          Fri Jun 10 10:49:38 2005 Database 290 Terminal     1231
```

JPM 00164



```
                        Prymak, Inc. - VERSION 13.2
                        LBMC PRODUCTION SYSTEM -- 0522
 In DB 295              Add/Change a Record         DB Name CONVENTIONAL LO
 LOAN NO.  6489597    BORROWER    DITTO          Screen       OCPPDS1
 *** BORR FEES FOR AMT FINANCED & DISCLOSURE [      at     % total discount]
 Is this an ESTIMATE? (Y/N) N  Interest Credit? [ ] Actual Dt 1st Pmt [08/01/05]
 --- PREPAID FEES (Part Of APR) ----------------------------------------------
 Borrower Originat'n Fee:       % --(OR)-- $      ................ $    0.00
 Borrower Discount Fee:         % --(OR)-- $   0.00 ...............      0.00
 Prepaid Interest/Int. Credit (for 19 days @ $   31.16 per diem) ...     592.04
 Broker Fees: Appl. Fee        U/W Fee            Processing Fee
                 "Mortgage Broker Fee"            Demand Fee....
 LBMC Fees: Inspection         U/W Fee    0.00   Processing Fee     299.00
    Flood Search Fee...    5.00  Tax Svc   0.00   Commitment Fee
    Borr Buydown Amount         Borr Buydown Subsidy Intr .......
 First Year PMI Premium ........ $        ..    months PMI  Escrow
 Mortgage Insurance Application Fee ..................................
 --- OTHER CHARGES (NOT Part of APR) -----------------------------------------
 State-specific Fee - CA                            N ......
 Aggregate Escrow Adjustment .......................................     0.00
 [ 0] payments Real Estate Taxes @ $  673.85 yearly ...............      0.00
 [ 0] payments Hazard Insurance  @ $1,565.09 yearly ................     0.00
 [ 0] payments Flood Insurance   @ $   0.00 yearly ................      0.00
 Hazard Insurance Estimated Premium ................................  1,565.09
            Fri Jun 10 10:50:02 2005 Database 295 Terminal    1231
```

JPM 00165



```
                        Prymak, Inc. - VERSION 13.2
                        LBMC PRODUCTION SYSTEM -- 0522
 In DB 295                 Add/Change a Record         DB Name CONVENTIONAL LO
 LOAN NO.    6489597    BORROWER  DITTO         Screen      OCPPDS2
 --- OTHER PREPAIDS (Part Of APR) ---------------------------------------------
   Credit Report Fee to
   (Low $       /High $        )  POC? (Y/N)                        $
   Appraisal Fee to BARBARA MASSEY
   (Low $       /High $        )  POC?   Include in APR? (Y/N) Y
                                         (Misc fee #1) ...........
                                         (Misc BROKER fee) .......
   Closing Escrow Fees ............ (Low $        /High $       ) ...
   Attorney Fees ...................................................
   Courier/Messenger Fees ..........................................
   3rd Party Recording Fees ........................................
 --- OTHER PREPAIDS (NOT Part of APR) ------------------------------------------
   Document Preparation Fee ........................................ $    0.00
   Document Redraw Fee .............................................      0.00
   Notary Fees .....................................................
   Recording (includes ONLY amounts paid to Recorder's Office) .......
   Title Insurance Fee ............ (Low $        /High $       ) ...
   Pest Inspection .................................................

 ---> UPDATE FEES? (Y/N)
            Fri Jun 10 10:50:15 2005 Database 295 Terminal    1231
```

JPM 00166

PNOTE

## NOTE

| June    9 , 2005 | ANAHEIM | CA |
|---|---|---|
| *Date* | *City* | *State* |

**5815-5817 E 17TH STREET**      **OAKLAND**      **CA**      **94621**
*Property Address*

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $    104,339.00        (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is

**LONG BEACH MORTGAGE COMPANY**        . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST
I will pay interest at a yearly rate of        10.900  %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS
I will pay principal and interest by making payments each month of U.S. $        985.77
I will make my payments on the        first        day of each month beginning on **August**     1 ,  2005 ,
. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on        **July**     1 ,  2035
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at
**P.O. Box 2441, Chatsworth CA 91313-2441**        or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of    **FIFTEEN**
calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be
**6.000 %** of my overdue payment, but not less than U.S. $  **1.00**        and not more than
U.S. $  **59.15**        . I will pay this late charge only once on any late payment.
(B) Notice from Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A DEED OF TRUST
In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.
Some of those conditions are described as follows:
**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

### 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

| CALIFORNIA - SECOND MORTGAGE | | Loan No. 6489597-7916 |
|---|---|---|

4140546 (0403)
4140546T (06/14/04) JMR

Page 1 of 2
VMP Mortgage Solutions (800)521-7291

Initials

JPM 00167

If I make a full prepayment during the first **2** year(s) of the loan, I may be charged a fee that is equal to the lesser of either:

(a) The amount equal to the payment of six months advance interest on the amount prepaid in excess of 20 percent of the original principal amount, or

(b) The amount equal to (i) 3% of the original principal amount if the Note Holder receives the prepayment on or before the first anniversary date of this Note; (ii) 2% of the original principal amount if the Note Holder receives the prepayment after the first anniversary date but on or before the second anniversary date of this Note; XXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXX. Thereafter, prepayment of this Note shall be permitted without any prepayment fee.

The prepayment fee shall be payable upon full prepayment, voluntary or involuntary; including but not limited to a prepayment resulting from Note Holder's permitted acceleration of the balance due on this Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment, I will notify the Note Holder in writing that I am doing so. Any partial prepayment shall be applied to interest accrued on the amount prepaid and then to the principal balance of this Note. A partial prepayment during the amortization period shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in this Note) nor relieve me of the obligation to make the installments each and every month until this Note is paid in full. Partial prepayments shall have no effect upon the due dates of my monthly payments unless the Note Holder agrees in writing to such change.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER**
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

_____ (Seal)   _____ (Seal)
FRANK DITTO            -Borrower              -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower              -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower              -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower              -Borrower

*(Sign Original Only)*

4140546 (0403)
4140S462 (08/14/04) JMR

Page 2 of 2

Loan No. 6489597- 7916

 

**LOAN NO. 6489595-7916**

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| June     9 , 2005 | ANAHEIM | CA |
|---|---|---|
| [Date] | [City] | [State] |

**5815-5817 E 17TH STREET,**          OAKLAND, CA  94621
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $  417,356.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**LONG BEACH MORTGAGE COMPANY**
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of          6.800 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on          **August    1 , 2005** .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on          **July      1 , 2045** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at :  **P.O. Box 2441, Chatsworth CA 91313-2441**

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $          **2,533.18**          . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of          **July      , 2007**          , and on that day every          **6th**          month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market ("LIBOR"), as set forth in the "Money Rates" section of The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding          **Four and Ninety Nine Hundredths**          percentage point(s) (          **4.990**          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          **8.800** % or less than          **6.800**          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than          **One**          percentage points (          **1.000** %)

CALIFORNIA FIXED/ADJUSTABLE RATE NOTE - LIBOR

Page 1 of 3

   LOAN NO. 6489595-7916

from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **12.800 %**, which is called the "Maximum Rate" or less than **6.800** % which is called the "Minimum Rate".

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment during the first **2** year(s) of the loan, I may be charged a fee that is equal to the lesser of either:

(a) The amount equal to the payment of six months advance interest on the amount prepaid in excess of 20 percent of the original principal amount, or

(b) The amount equal to (i) 3% of the original loan amount if the Noteholder receives the prepayment on or before the first anniversary date of the Note; (ii) 2% of the original loan amount if the Noteholder receives the prepayment after the first anniversary date but on or before the second anniversary date of the Note; (XXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX) Thereafter, prepayment of the Note shall be permitted without any prepayment fee.

The prepayment fee shall be payable upon full prepayment, voluntary or involuntary; including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment, I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

CALIFORNIA FIXED/ADJUSTABLE RATE NOTE · LIBOR

4140479 (0111)
41404792 (06/06/03) JM/R

JPM 00170

  

LOAN NO. 6489595-7916

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument provides as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead provide as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
FRANK DITTO                     -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                                -Borrower                                  -Borrower

THIS IS TO CERTIFY THAT THIS (Sign Original Only)
A TRUE COPY OF THE ORIGINAL
FIDELITY NATIONAL TITLE
BY [____]

CALIFORNIA FIXED/ADJUSTABLE RATE NOTE - LIBOR
4140479 (06/08/02) JMR
4140479 (0308)                    Page 3 of 3

JPM 00171



PNOTE OTHER

# SIGNATURE/NAME AFFIDAVIT

DATE:  **June**  **9 , 2005**

LOAN #:  **6489597- 7916**

BORROWER: **FRANK DITTO**

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

**FRANK DITTO**
(Print or Type Name)                               Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____              _____
(Print or Type Name)                               Signature

_____              _____
(Print or Type Name)                               Signature

_____              _____
(Print or Type Name)                               Signature

_____              _____
(Print or Type Name)                               Signature

and that                                                                                          are one

and the same person.



MARIA DE VOLDER
COMM. #1347222
NOTARY PUBLIC-CALIFORNIA
SAN MATEO COUNTY
My Commission Expires Mar. 19, 2006

State/Commonwealth of   CALIF.
County/Parish of   San mateo

Subscribed and sworn (affirmed) before me
this          9          day of   June   . 2005.

_____
Notary Public in and for
the State/Commonwealth of
County/Parish of
My Commission Expires:

VMP-304 (0103)

VMP MORTGAGE FORMS - (800)621-7291

3/01

NAMEAFF (03/29/05) JMR



Recording Requested By| Return To:
**LONG BEACH MORTGAGE COMPANY**

Return To:
**P.O. BOX 201085**
**STOCKTON, CA 95202**

2005241775  06/14/2005 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:  39.00

11  PGS

**LOAN NO. 6489597-7916**

Prepared By:

Recording Request By
Fidelity National Title Company
Order # 1136546

0695688739

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

THIS DEED OF TRUST is made this **9th** day of **June** **2005** , among the Trustor,

**FRANK DITTO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

, whose address is

**1524 A HAIGHT STREET, SAN FRANCISCO, CA 94117**

(herein ''Borrower''),

**FIDELITY NATIONAL TITLE COMPANY**

(herein ''Trustee''), and the Beneficiary,

**LONG BEACH MORTGAGE COMPANY**                                      , a corporation organized and
existing under the laws of **the State of Delaware**                  , whose address is
**1400 S. DOUGLASS RD., SUITE 100, ANAHEIM, CA 92806**                                (herein ''Lender'').
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the County of
**ALAMEDA**                    , State of California:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of   **5815-5817 E 17TH STREET**                                         [Street],
**OAKLAND**                    [City], California  **94621**          [ZIP Code] (herein ''Property Address'');

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

VMP-76(CA) (0207)
Page 1 of 7   TDCA2ND1 (04/02/04) PC
VMP MORTGAGE FORMS - (800)521-7291

Form 3805
Amended 9/88
Initials:



JPM 00173

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated

**June        9,   2005**                and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $   **104,339.00**        , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on        **July        1 , 2035**        ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to

-76(CA) (0207)          Page 2 of 7          Form 3805
TDCA2ND2 (04/02/04) PC          Loan No. 6489597-7916

JPM 00174

Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

Initials: _____

Loan No. 6489597-7916

JPM 00175

shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

VMP-76(CA) (0207)
TDCA2ND4 (04/02/04) PC

Page 4 of 7

Initials: _____   Form 3805

Loan No. 6489597-7916

JPM 00176

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                                    , in Book
              , Page           , records of                                         County, or filed for
record with recorder's serial number                       ,                                    County,
California, executed by **FRANK DITTO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**


as trustor (or mortgagor) in which
**LONG BEACH MORTGAGE COMPANY**                                                                      is named
as beneficiary (or mortgagee) and
**FIDELITY NATIONAL TITLE COMPANY**

                                                                                                      as trustee

be mailed to     **Washington Mutual Bank**
at               **P.O. Box 2441**
                 **Chatsworth CA 91313-2441**

Form 3805

Loan No. 6489597-7916

JPM 00177

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____

**State of California**
**County of ALAMEDA**
On     6- 9-05     , before me     The undersigned
                                           , personally appeared

**FRANK DITTO**

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

   WITNESS my hand and official seal.

_____

                                        **LONG BEACH MORTGAGE COMPANY**
                                        **1400 S. DOUGLASS RD., SUITE 100**
                                        **ANAHEIM, CA 92806**
IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.


_____ (Seal)       _____ (Seal)
**FRANK DITTO**             -Borrower                               -Borrower



_____ (Seal)       _____ (Seal)
                            -Borrower                               -Borrower


_____ (Seal)       _____ (Seal)
                            -Borrower                               -Borrower


_____ (Seal)       _____ (Seal)
                            -Borrower                               -Borrower


                                            *[Sign Original Only]*


-76(CA) (0207)                    Page 6 of 7                          Form 3805
   TDCA2ND6 (04/02/04) PC                                       Loan No. 6489597-7916

JPM 00178

State of California
County of San Mateo

} ss.

On 6-9-05                before me,     the undersigned. personally appeared

Frank Ditto.

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal.

(This area for official notarial seal)

_____ (Seal)



VMP-76(CA) (0207)
TDCA2ND7 (04/02/04) PC

Page 7 of 7

Form 3805

Loan No. 6489597-7916

JPM 00179

# ILLEGIBLE NOTARY SEAL OF DECLARATION

## (Government Code 27361.7)

I declare under penalty of perjury that the notary seal on the document, to which this statement is attached, reads as follows:

Name of Notary: _Maria De Volder_

Commission Number: _1347222_

Notary Public State: _CA_

County of Commission: _San Mateo_

My Commission Expires: _3/19/06_

Signature of Declarant: _____

Print Name of Declarant: _Quezada. Mike_

City & State of Declarant: Pleasanton, California

Date Signed: _6_ - _13_ - _2005_

JPM 00180

Loan No. 6489597-7916

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this **9th** day of **June** , **2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**LONG BEACH MORTGAGE COMPANY
1400 S. DOUGLASS RD., SUITE 100
ANAHEIM, CA 92806**

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**5815-5817 E 17TH STREET
OAKLAND, CA 94621**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument

Form 3170 3/93

Page 1 of 2

-57 (9304).01

VMP MORTGAGE FORMS - (800)521-7291

Initials:

1057-1 (05/24/00) PC

JPM 00181

Loan No. 6489597-7916

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)          _____(Seal)
FRANK DITTO                      -Borrower                                          -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                          -Borrower

JPM 00182

**Escrow No.:** 05-**2010013**-MD
**Locate No.:** CAFNT0901-0941-0006-0001136546
**Title No.:** 05-**1136546**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:


Lot 59 and portions of Lot 58 and 60 of Map showing subdivisions of Lots 54, 55, 56, 65, 66, 67 and 68 of Kingsland Tract, filed December 1, 1890, Map Book 8, Page 48, Alameda County Records, more specifically described as follows:

Beginning at the most Easterly point of the said Lot 60, thence along North 42° 13' West 20 feet, to true point of beginning; thence along the same line North 42° 13' West 35 feet, thence South 47° 47 West 108 feet, thence South 42° 13' East 35 feet, thence North 47° 47' East 108 feet, to the true point of beginning,


Said legal description is pursuant to Parcel Map Waiver Case number PMWO4-039, recorded 02/15/2005, Series No. 2005/63909.
Official Records .



ESCSET

Date:
Loan Number:      6489597-7916
Borrower(s):       FRANK DITTO


Property Address:   5815 E 17TH STREET

City, State, Zip:    OAKLAND, CA  94621

# CALIFORNIA IMPOUND DISCLOSURE/WAIVER

For convenience, an impound account may be established on behalf of the Borrower(s) with the Lender, for the payment of property taxes and hazard insurance premiums. The Lender will pay          2.000   % simple interest on money deposited into the impound account.

The lender does not require an impound account at loan origination.  However, the Lender may require an impound account after loan origination if the Borrower(s) fails to pay two consecutive tax installments prior to the delinquency date, or if the Borrower(s) otherwise defaults under any of the terms of the loan documents.

The Borrower(s) may elect to establish an impound account. The Borrower(s) should register his or her choice by placing an "X" below, and acknowledges this option is available at the time of application and can be changed no more than once annually.

☐   I/We request the establishment of an impound account for payment of my/our taxes and/or insurance by the Lender.

☐   I/We choose not to have an impound account established in connection with this loan.

If an escrow account is not established the Borrower(s) will assume full responsibility for the timely payment of taxes and/or insurance premiums for the property referenced herein, and agrees to provide proof of such payment upon the Lender's request. The Borrower(s) failure to make two such payments within 30 days of their due date, or if Borrower(s) otherwise defaults under any of the terms of the loan documents, will result in a revocation of this agreement, and the establishment of impound account to be administered by the Lender will be mandatory.

The undersigned hereby acknowledge receipt and understanding of this disclosure.


| Borrower  FRANK DITTO | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Lender Representative | Date |
|---|---|



-4140383 (0003)
4140383 (03/02/2000) PC

ELECTRONIC LASER FORMS, INC. - (800)327-0545

JPM 00184




LONG BEACH MORTGAGE COMPANY
1400 S. DOUGLASS RD., SUITE 100
ANAHEIM, CA 92806

hereinafter referred to as "Lender"

# ESCROW ACCOUNT AGREEMENT
# TAX & INSURANCE

Borrower:  FRANK DITTO                    Loan No.   6489597-7916

The undersigned borrower(s) have applied for a Real Estate Loan with  LONG BEACH MORTGAGE COMPANY
hereinafter called the "Lender", secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and repaid
as stated in a Promissory Note.
It is understood that a Tax and Insurance Escrow Account is:

[XX]  1.  Optional: An impound account is not required for your loan.

[ ]  2.  Required: An impound account is required for your loan.

Each of the undersigned borrower(s) agree to make the Note payments and pay the Lender the amounts the Lender has figured
for deposit in the Tax and Insurance Escrow Account. These amounts should be enough to pay, when due, all taxes,
assessments, insurance premiums and other expenses relating to the loan.

If the Lender determines that there will not be enough money to pay the expenses, they may require the borrower(s) to increase
payments into the Tax and Insurance Escrow Account. The Lender will not have to pay the expenses if there is not enough
money in the Tax and Insurance Escrow Account. A default under the Security Instrument may occur if any of the described
expenses remain unpaid.

If the Tax and Insurance Escrow Account is required, the borrower(s) cannot cancel it. If the Tax and Insurance Escrow
Account is optional, the borrower(s) may cancel it at any time. If the borrower(s) defaults on their Security Instrument, the
Lender may change the Tax and Insurance Escrow Account from optional to a required Tax and Insurance Escrow Account.

The Lender or any investor who purchases the loan may change or cancel the Tax and Insurance Escrow Account arrangements
as allowed by law.

If the law of the state in which the property is located requires payment of interest on money in the Escrow Account, the Lender
will compute and pay interest at a rate of no less than the minimum required by such applicable law on single-family
owner-occupied residences only.

BORROWER ACKNOWLEDGEMENT:

EXECUTED THIS       9th                    DAY OF     June               ,    2005

FRANK DITTO

4140233 (9602)                    ELECTRONIC LASER FORMS, INC. · (800)327-0545
CESCIMP (10/30/04) PC

JPM 00185



LONG BEACH MORTGAGE COMPANY
1400 S. DOUGLASS RD., SUITE 100
ANAHEIM, CA 92806

hereinafter referred to as "Lender"

## HAZARD INSURANCE REQUIREMENTS AND AUTHORIZATION

Borrower:   FRANK DITTO                                    Loan No. 6489597-7916

Each of the undersigned borrowers, without limiting the effect of the terms and conditions of the Mortgage, Deed of
Trust, or Security Deed ("the Security Instrument") securing the above indicated loan with Lender, acknowledges
responsibility to provide, at the expense of the undersigned, hazard insurance upon the real property described in said
Security Instrument.  All insurance policies must comply with the following requirements:

- The hazard insurer must at all times be rated B+/IV in Best's Insurance Reports (or Lloyd's of London) and
  licensed or otherwise authorized by law to conduct business in the jurisdictions where the Mortgaged Property is
  located.

- Policy must be written for a minimum of fire and special form coverage which must cover all units, garages,
  outbuilding, etc. by direct mention of allowance in the policy.

- Coverage must be in an amount not less than the lesser of the insurable value of the improvements and the actual
  unpaid balance of the Mortgage Loan, and in any event not less than the minimum amount required under the
  terms of coverage to fully compensate for any damage or loss on a replacement cost basis.

- Policy term must be a minimum of one (1) year or continuous until canceled.  A binder is acceptable for a period
  of 90 days.  The original policy or binder must be in our office prior to the disbursement of funds.

- The deductible may not exceed the greater of $1,000 or 1% of the amount of coverage.

- The Insured's name and the property address must be identical to that shown on the policy of Title Insurance.

- In the event the Lender does not receive notification from the Borrower that the premiums have been paid at least
  thirty (30) days prior to the expiration date of the policy, the Lender may, at its option, pay such premiums and
  add the cost of such premiums to the debt owed.

- Policy must contain a Lender's Loss Payable (Form 438 BFU) in favor of:

      Washington Mutual Bank, F.A.
      ISAOA/ATIMA
      P.O. Box 100564
      Florence, SC 29501-0564
      Loan No. 6489597-7916

**IMPORTANT NOTE:  If the Mortgage Loan is located in a condominium or PUD Project, the requirements listed
on the Hazard Insurance Requirements and Authorization PUD/Condominium Addendum must be followed in
addition to the requirements outlined above.**

It is understood that in order to comply with State and Federal regulations, the Lender may change the above
requirements from time to time without prior written notice.

By signing this agreement, the Borrower acknowledges that he has read and understands the terms of this agreement and
acknowledges that he has received a copy of this agreement.

Date:        June      9 , 2005

FRANK DITTO

4140230 (0008)

HAZ1 (04/00/04) PC

VMP MORTGAGE FORMS - (800)521-7291

THAT THIS IS
THE ORIGINAL
TITLE
BY

JPM 00186



Date:            June      9 ,  2005
Loan Number:     6489597-7916
Borrower(s):     FRANK DITTO


Property Address:   5815-5817 E 17TH STREET

City, State, Zip:   OAKLAND, CA  94621

# CALIFORNIA IMPOUND DISCLOSURE/WAIVER

For convenience, an impound account may be established on behalf of the Borrower(s) with the Lender, for the payment of property taxes and hazard insurance premiums. The Lender will pay                    2.000  % simple interest on money deposited into the impound account.

The lender does not require an impound account at loan origination.  However, the Lender may require an impound account after loan origination if the Borrower(s) fails to pay two consecutive tax installments prior to the delinquency date, or if the Borrower(s) otherwise defaults under any of the terms of the loan documents.

The Borrower(s) may elect to establish an impound account. The Borrower(s) should register his or her choice by placing an "X" below, and acknowledges this option is available at the time of application and can be changed no more than once annually.

☐   I/We request the establishment of an impound account for payment of my/our taxes and/or insurance by the Lender.

☒   I/We choose not to have an impound account established in connection with this loan.

If an escrow account is not established the Borrower(s) will assume full responsibility for the timely payment of taxes and/or insurance premiums for the property referenced herein, and agrees to provide proof of such payment upon the Lender's request. The Borrower(s) failure to make two such payments within 30 days of their due date, or if Borrower(s) otherwise defaults under any of the terms of the loan documents, will result in a revocation of this agreement, and the establishment of impound account to be administered by the Lender will be mandatory.

The undersigned hereby acknowledge receipt and understanding of this disclosure.

_____        _____
Borrower    FRANK DITTO               Date        Borrower                          Date

_____        _____
Borrower                              Date        Borrower                          Date

_____
Lender Representative                 Date


-4140383 (0003)
4140383 (03/02/2000) PC

ELECTRONIC LASER FORMS, INC. - (800)327-0545

JPM 00187

FARMERS INSURANCE GROUP OF COMPANIES DESIGNATIONS

4. Illinois Farmers Insurance Company
Aurora, Illinois

6. Farmers Insurance Company of Idaho
Pocatello, Idaho

8. Farmers Insurance Company of Washington
Vancouver, Washington

* 10. Farmers Insurance of Columbus, Inc.
Columbus, Ohio

5. Farmers Insurance Company, Inc.
Shawnee Mission, Kansas

7. Farmers Insurance Company of Arizona
Phoenix, Arizona

9. Farmers Insurance Company of Oregon
Tigard, Oregon

* Not licensed or operating in the states of Kansas and Colorado
** Not licensed or operating in the state of Colorado

JPM 00188